**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA,                    *

Plaintiff                          *

v.                                 *          Civil Action No. ELH-18-2176

RONALD A. SAVILLE, *et al*.,       *

Defendants                         *
                                  ***

## MEMORANDUM OPINION

Plaintiff Donald R. Pevia, who is self-represented, is an inmate confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He filed this civil rights suit against Warden Frank Bishop, Ronald Saville, and Adam Schroyer, pursuant to 42 U.S.C. § 1983. ECF 1.[1] Numerous exhibits are appended to the Complaint. Plaintiff alleges that while he was incarcerated at NBCI, he was injured when correctional staff disregarded a medical order and a settlement agreement reached between plaintiff and the State, requiring that he be handcuffed in front. Pevia maintains that the conduct of the correctional staff amounted to deliberate indifference to his medical needs.

Of relevance here, plaintiff has previously filed several suits in connection with his need for front handcuffing. In 2013, in the case of *Pevia v. Shearin*, ELH-13-3083 ("Pevia I") Pevia claimed that he sustained a shoulder injury due to improper handcuffing. The Court appointed pro bono counsel for Pevia (ECF 39) and the case settled. *Id.*, ECF 50. Thereafter, in 2017, Pevia filed two additional suits, each raising identical claims but against different defendants. *See Pevia v. Saville*, Civil Action ELH-17-2319 ("Pevia II"); *Pevia v. Bishop, et al*., Civil Action ELH-17-

---

[1] Citations are to the court's electronic docket.

2322 ("Pevia III"). Pevia II named Saville as a defendant. Pevia III named Warden Bishop and Schroyer as defendants. This Court consolidated Pevia II and Pevia III. *See* Pevia II, ECF 30; Pevia III, ECF 27. And, in a combined Memorandum Opinion and Order of June 22, 2018, both cases were dismissed, without prejudice, because plaintiff had failed to exhaust administrative remedies. *See* Pevia II, ECF 29; ECF 30; Pevia III, ECF 27; ECF 28. Pevia subsequently completed the administrative process and then filed the instant case ("Pevia IV"), largely realleging the same facts as detailed in Pevia II and Pevia III.

In Pevia IV, defendants have moved to dismiss or, in the alternative, for summary judgment (ECF 18), supported by a memorandum (ECF 18-1) (collectively, the "Motion"). They rely on, and incorporate by reference, the memoranda and exhibits that were previously filed in Pevia II and Pevia III. Plaintiff opposes the Motion (ECF 21), supported by his earlier submissions and additional exhibits.[2] Plaintiff has also filed a motion for preliminary injunction ("P.I. Motion"). ECF 14.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, I shall deny defendants' Motion. I shall also deny plaintiff's P.I. Motion.

## I.     Factual Background

A.     Plaintiff's claims

In the earlier Memorandum Opinion, filed in the consolidated cases, I summarized the factual background as follows, Pevia II, ECF 29 at 2-6; Pevia III, ECF 26:[3]

---

[2] Plaintiff's opposition is titled "Motion for Summary Judgement [sic] In Response To Defendants [sic] Motion To Dismiss." But, in substance, it is an opposition and shall be construed as such. Plaintiff's motion for extension of time to respond to defendants' dispositive motion (ECF 20) is granted, nunc pro tunc.

[3] In my earlier Memorandum Opinion, I did not designate the 2013 case as Pevia I. Instead, I labeled case ELH-17-2319 as Pevia I, and I labeled case ELH-17-2322 as Pevia II. In this Memorandum Opinion, however, I have labelled the 2013 case as Pevia I. Therefore, what was

## I. Background

### A.

In October 2013, Pevia instituted a civil rights complaint against a host of defendants concerning correctional staff's disregard for medical orders directing plaintiff to be handcuffed in the front. *See Pevia v. Shearin, et al.*, ELH-13-3083. In that case, I appointed pro bono counsel to represent Pevia. *See* ECF 39. A settlement conference was conducted by Magistrate Judge J. Mark Coulson on September 2, 2015. *See* Docket. Thereafter, the Court was advised that the case had been settled. Accordingly, I issued an Order of dismissal under Local Rule 111. *See* ECF 51.

On October 30, 2015, the settlement agreement was finalized between plaintiff and the defendants in the 2013 case: former Commissioner Michael Stouffer, former Warden Bobby P. Shearin, Keith Arnold, Dale Smith, Lt. Paul Pennington, Christopher Wedlock, Nicholas Soltas, James Vinci, Christopher Wedlock, Brian Goldizen, Jenifer Robertson, Warden Frank Bishop, Richard E. Miller, and the Department of Public Safety & Correctional Services ("DPSCS"). Pevia [III], ECF 16-1 at 5. The agreement specified that plaintiff was to be handcuffed in front. Pevia [II], ECF 1 at 3; ECF 17-4 at 3; Pevia [III], ECF 16-1 at 6; ECF 14-4 at 14. However, under the terms of the settlement, front cuffing could be temporarily denied in the event of an emergency, or if plaintiff abused the cuffing order. Pevia [II], ECF 17-4 at 3; Pevia [III], ECF 16-1 at 7; ECF 14-4 at 14.

In addition, the agreement also provided that plaintiff's front cuffing order could be re-evaluated after September 1, 2016. If the attending physician determined that the front cuffing order was no longer necessary, plaintiff could elect to obtain a second opinion from the orthopedic specialist contracted to the on-site medical service. If the orthopedic specialist disagreed with the attending physician, the orthopedic specialist's opinion would control, so long as the DPSCS Medical Director approved. Pevia [III], ECF 16-1 at 6-7; ECF 14-4 at 14-15.

In November of 2015, plaintiff underwent left shoulder compression surgery. Pevia [III], ECF 14-4 at 26-27.

### B. Pevia [II]

In Pevia [II], plaintiff alleges that on August 29, 2016, Saville came to his cell to escort him to a sick call appointment. ECF 1 at 3. Plaintiff states that he placed his hands out of the cell door slot to be handcuffed in front and advised Saville that he was to be handcuffed in front, but Saville stated that if plaintiff

---

previously referred to as Pevia I is now Pevia II, and what was previously Pevia II is now designated as Pevia III.

wanted to go to sick call he would have to be handcuffed behind his back. *Id*. Plaintiff complied with Saville's directive and claims that, as a result, he felt a ripping sensation in his shoulder. *Id*. at 3-4.

Plaintiff alleges that shortly after the incident he was seen by Nurse Practitioner Krista Swann, who observed swelling at plaintiff's shoulder and expressed concern that the ligaments were torn again. *Id*. at 4. He was referred to physical therapy. Plaintiff claims that ultimately he was diagnosed as suffering from a strained bicep. *Id*. at 4.

\* \* \* \*

## C.     Pevia [III]

In Pevia [III], plaintiff alleges that on October 11, 2016, Schroyer was assigned to escort plaintiff to his housing unit from physical therapy. ECF 1 at 3. Schroyer directed plaintiff to turn around to be handcuffed. *Id*. Plaintiff advised Schroyer that he was to be handcuffed in front, but Schroyer advised him there was "no such thing as front cuff at NBCI." *Id*. Plaintiff states that when they returned to his cell, there was a sign over plaintiff's cell door, which was placed there after the incident with Saville on August 29, 2016, indicating plaintiff was to be front handcuffed only. *Id*. at 4.

Plaintiff claims that, as a result of being handcuffed behind his back, he felt a sharp pain from his collar bone down to his forearm. *Id*. He asked Schroyer to notify the medical department that he needed assistance, but Schroyer failed to do so. *Id*. Plaintiff submitted a sick call slip and was provided a sling and ice for swelling as well as follow up care. *Id*. at p. 5.

On October 11, 2016, plaintiff submitted ARP NBCI-2268-16 complaining that Schroyer insisted on cuffing him from behind during an escort from physical therapy despite Pevia advising Schroyer he was to be front cuffed only. ECF 14-4 at 3. The ARP was denied on November 16, 2016, after an investigation determined that plaintiff's front cuffing order expired on August 18, 2016, and that he was subjected to a medical order which required "extended cuffing" which is what the ARP investigator noted plaintiff received. *Id*.

Documents provided to the court suggest that Pevia's front cuffing order had not in fact expired. *See* Pevia [III], ECF 14-4 at 14 (Memorandum dated January 17, 2018 from John White, IGO Coordinator to Assistant Warden Jeffrey Nines, indicating, among other things, that plaintiff was to be "front cuff only" until a reevaluation designated otherwise); ECF 14-4 at 16 (Letter dated February 1, 2018, from Dayena M. Corcoran, Commissioner of Correction to J. Michael Zeigler, Deputy Secretary, Operations DPSCS, advising, among other things, that upon plaintiff's return to NBCI on January 22, 2018, shifts were advised that plaintiff was front cuff only and a sign was placed on his cell door stating he is

"front cuff only.").

Pevia appealed the ARP to the Commissioner of Correction due to the lack of a response to his ARP from the Warden. ECF 14-4 at 11. He submitted a second appeal on November 26, 2016, after receiving the Warden's response. ECF 1-1 at 3-4. The appeal was denied on August 17, 2017. ECF 14-4 at 12.

On October 14, 2016, Pevia filed a grievance with the IGO concerning Schroyer's violation of the front cuffing order. Pevia [III], ECF 14-4 at 24. A hearing was held on July 13, 2017. *Id*. at 25. Plaintiff filed Pevia [III] on August 11, 2017. ECF 1.

The ALJ issued a written opinion on October 6, 2017, finding plaintiff's grievance to be meritorious and directed NBCI to "implement a meaningful program or other action to effectively inform all Correctional Officers whose responsibilities include handcuffing inmates that the Grievant is to be front-cuffed only until notified differently." *Id*. ECF 14-4 at 42. The Secretary of DPSCS affirmed the ALJ's ruling on January 8, 2018. *Id*. at 16.

Notably, after the Settlement Agreement, the front cuffing order was violated in November 2015 and in January 2016. Pevia II, ECF 17-4 at 37-38. Plaintiff filed grievances regarding both occurrences. He later signed off on the grievances after assurances were provided to him that staff had been alerted to his front cuffing order. Specifically, in response to ARP NBCI 0124-16, filed by plaintiff on January 13, 2016, regarding the violation of his front cuffing order, plaintiff was advised that his complaint was meritorious in part. *Id.*, ECF 28-1 at 6. The response said, *id.*: "The institution has remedied your situation by having an Alert placed on OCMS and reflected on the NBCI Inmate Data Manager. Housing Unit 1 staff has been duly notified of your 'Front Cuff Order' and a notification has been placed above your cell door to alert staff who may need to escort you within the Housing Unit or NBCI."

According to plaintiff, Saville was the "primary tier officer" for his tier at the time of the settlement negotiations, and was "fully aware" of the medical agreement. Pevia IV, ECF 21 at 4. He also claims that, after the settlement agreement was signed, emails were sent to notify officers regarding the cuffing procedure. *Id.* Among other things, he disputes the account of

Sergeant Adam Schroyer concerning the events of October 11, 2016.  *Id.*; *see also id.*, ECF 21-6 at 2; Pevia II, ECF 28 at 2.

Plaintiff has also provided an Affidavit from inmate Rico Marzano.  Pevia IV, ECF 21-1. Mazano, who was housed next to plaintiff on August 29, 2016, states that when Saville approached plaintiff's door and announced that plaintiff had a sick call, plaintiff put his hands out of the slot to be cuffed.  *Id.*  Saville told Pevia, *Id.*  "'Behind the back only.'"  *Id.*  Pevia "advised Saville that he was front cuff."  *Id.*  Saville responded that if Pevia did not cuff behind the back he would not go to his sick call.  Marzano then heard cuffs being applied and saw plaintiff come out of his cell.  Marzano avers that he "specifically heard Mr. Pevia tell Ofc. Saville <u>That He was Front Cuff</u>!"  *Id.* (emphasis in original).

B.    Defendants' Contentions

Saville avers that he was assigned to Housing Unit 1 for approximately two and one half years, from 2013 to the end of May 2015.  Pevia II, ECF 24-3 (Saville Decl.), ¶ 4.  In June 2015, Saville was assigned on a regular basis to plaintiff's housing unit, Housing Unit 2.  *Id.* ¶ 5.  On August 29, 2016, he escorted plaintiff to the medical department during "modified movement" *Id.*, ECF 17-3 (Saville Decl.), ¶ 5.  Saville denies that plaintiff advised him that he had a front cuffing medical order and states that plaintiff did not offer any paperwork stating he had a front cuff order.  *Id.* ¶ 6.  According to Saville, if plaintiff had done so, he would have honored the order and placed the handcuffs on in the front.  *Id.* ¶ 11.

Additionally, Saville explains that because of plaintiff's size and the breadth of his shoulders, he used two pairs of handcuffs during the escort.  *Id.* ¶ 7.  Saville maintains that plaintiff did not show any sign of discomfort, nor did he complain of pain or suffering.  *Id.*

In any event, the medical unit is about 50 yards from plaintiff's cell and the escort was

brief. *Id*. ¶8. Plaintiff remained restrained during the medical examination, which took approximately 10-15 minutes. *Id*. ¶ 9.

Prior to Saville's escort of plaintiff, plaintiff submitted a sick call slip on August 17, 2016, requesting to "see medical immediately" because his shoulder was "in more pain than before I had surgery." Pevia II, ECF 17-2, at 63. He was seen by Robustiano Barrera, M.D. on August 20, 2016. Plaintiff described the pain as "bone on bone," and Dr. Barrera noted that plaintiff's range of motion was poor. *Id*. at 3-4.

On August 29, 2016, after Saville escorted plaintiff to the medical unit, plaintiff was evaluated by Mahboob Ashraf, M.D., who noted that plaintiff reported to him that the shoulder pain "occurred after he was playing basketball." Pevia II, ECF 17-2 (medical records) at 6-7. Dr. Ashraf did not make any notation that plaintiff mentioned the back cuffing.[4] Ashraf ordered an x-ray of the left shoulder to determine whether there was a fracture or dislocation. *Id*. at 5.

Saville maintains that neither plaintiff nor the physician said anything to him about plaintiff being handcuffed from behind. *Id.*, ECF 17-3, ¶ 9. The exam took "10-15 minutes." *Id.* Thereafter, Saville escorted plaintiff back to his cell and removed the restraints. *Id.*¶ 10.

On September 8, 2016, Krista Bilak, RNP examined plaintiff. *Id.*, ECF 17-2 at 9-12. At that time, plaintiff was unable to lift his arm from his body and was in severe pain. Bilak diagnosed plaintiff as suffering from an acute "dislocation, recurrent, shoulder" and prescribed pain medication for him and provided him with an arm sling. *Id*. Plaintiff received a cortisol injection to his left bicep tendon on September 17, 2016. *Id*. at 14.

Subsequently, plaintiff was approved for physical therapy, and was diagnosed with

---

[4] Plaintiff disputes that he told Dr. Ashraf that his shoulder injury was from playing basketball and explains that Ashraf was confused about an injury plaintiff suffered to his knee. Pevia IV, ECF 21 at 4.

bicipital tendinitis. *Id.*, ECF 17-2 at 15-16, 20. He underwent a series of physical therapy sessions with a goal to restore elevation of his left shoulder and establish a self-management program. *Id.* at 21, 27, 29-31, 33, 35-39, 46-50.[5]

In regard to the incident of October 11, 2016, Schroyer denies that plaintiff informed him of the front cuffing order. Pevia III, ECF 14-3 (Scroyer Decl.), ¶ 7. Schroyer states that, prior to the incident, he had little to no involvement with plaintiff. *Id.* ¶ 5. He explains that he had been assigned to the segregation housing unit for an extended period of time and on the date of the incident was assigned to the Support Services Building, assisting with returning inmates to their assigned cell locations. *Id.* ¶ 6. When he entered the holding area in the medical department he found plaintiff secured in a cage. Schroyer states that he instructed plaintiff to place his hands through the slot in the cage door to be handcuffed and plaintiff complied. *Id.*

Further, Schroyer avers that due to plaintiff's size and the breadth of his shoulders, he used two pairs of handcuffs for the escort. *Id.* ¶ 7. The use of two handcuffs allowed plaintiff's hands and arms to rest at his sides. *Id.* ¶ 8. Schroyer denies that plaintiff ever mentioned having a front cuffing order and did not show any signs of discomfort, nor did he complain of being in pain or otherwise suffering. *Id.* ¶¶ 7, 9.

The day after the incident, Bilak wrote a chart update indicating that plaintiff suffered a shoulder injury and he was provided with an arm sling and ice pack. Pevia III, ECF 14-2 at 28. The following day, when plaintiff appeared for physical therapy, he was wearing a sling. *Id.* at 28. On October 18, 2016, he came to physical therapy still wearing a sling and stated that he was sore due to irritating his shoulder while cleaning. *Id.* at 30.

---

[5] Plaintiff notes that although the x-ray showed only arthritic changes, an MRI was subsequently performed that showed that the ligament connecting the bicep to the rotator cuff was completely torn. Pevia IV, ECF 21 at 4.

On January 17, 2018, as a result of plaintiff's grievance regarding the incident with Schroyer, John White, NBCI IGO Coordinator, wrote a memorandum to Jeffrey Nines, Assistant Warden, with recommendations for complying with the Settlement Agreement and medical order. Pevia III, ECF 14-4 at 12-13. On February 1, 2018, the Commissioner of Correction provided John M. Zeigler, Deputy Secretary, with a list of steps that had been taken to implement compliance with the Settlement Agreement. *Id*. at 16. The steps included advising each shift for one week during daily roll as to plaintiff's front cuffing status. *Id*. Additionally, plaintiff was issued a new identification card, a sign was placed over his cell door, and his computer file was updated, each indicating plaintiff's front cuff status. *Id*. at 16-19.

## II. Motion for Injunctive Relief

In his P.I. Motion, plaintiff states that Schroyer and Saville regularly are assigned to plaintiff's housing unit. Pevia IV, ECF 14 at 1. He notes that both officers have multiple grievances filed against them and he is afraid that they will retaliate against him by filing a false inmate rule infraction. *Id*. He seeks an order that the defendants named in this case be kept away from him and that if he is placed on administrative segregation "a justifiable cause must be shown." *Id*. at 2.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Di Biase v. SPX Corp.*, 872 F.3d 224, 229-30 (4th Cir. 2017).

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Plaintiff fails to establish that he is likely to suffer irreparable harm absent preliminary injunctive relief. At a minimum, he does not demonstrate he is facing imminent or irreparable harm. The bald allegations contained in plaintiff's motion do not show that an injunction is in the public interest. Daily maintenance of security and order in a correctional institution are "considerations . . . peculiarly within the province and professional expertise of corrections officials." *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979). And, because plaintiff has a forum for his complaints the equities do not tip in his favor.

Simply stated, plaintiff has not sustained his burden of demonstrating that his requested injunctive relief is warranted. Therefore, I shall deny the motion.

## II. Standard of Review

### A.

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See*

*Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Notably, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018);

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not sought discovery. And, I am satisfied that, as to the correctional officers, it is appropriate to address defendants' Motion as one for summary judgment, because it will

facilitate resolution of this case. As to the claim against the Warden, however, I shall construe the Motion as one seeking dismissal.

**B.**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639,

645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

## C.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 573; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  But, the Supreme Court has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted; alteration in *Twombly*).

Moreover, to survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion

to dismiss. *Twombly*, 550 U.S. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the

sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558

(2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## D.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## IV. Discussion

Construing the allegations in plaintiff's Complaint liberally, as I must, the Court cannot determine on summary judgment whether Officers Saville and Schroyer interfered with prescribed medical treatment by failing to ensure that plaintiff was handcuffed in front, in compliance with medical orders and the settlement agreement reached in connection with prior litigation. And, plaintiff has stated a claim as to the Warden.

## A.  Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied,* 135 S. Ct. 1983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  In other words, there is no respondeat superior liability under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B. Deliberate Indifference

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, ___ F.3d ___, 2019 WL 4179813, at *6 (4th Cir. Sept. 4, 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard consists of a "two-pronged test: (1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

The claim here is one of failure to safeguard plaintiff's health. Analogizing to a claim of denial of adequate medical care under the Eighth Amendment, a court must consider whether there was deliberate indifference to a serious medical need. A plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is "'serious.'"")

(citations omitted). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the plaintiff's need for medical attention and the related risks but failed either to provide it or to ensure that the needed care was available. *Farmer*, 511 U.S. at 837; *see also Gordon*, 2019 WL 4179813 at *7; *De Paola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178; *see Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

In other words, deliberate indifference requires a showing that the defendant disregarded a

substantial risk of harm to the prisoner. *City of Mt. Ranier*, 238 F.3d at 575-76. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." A defendant's subjective knowledge can be proven by direct evidence of actual knowledge "or circumstantial evidence tending to establish such knowledge . . . ." *Gordon*, 2019 WL 4179813, at *7; *see Scinto*, 841 F.3d at 225.

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[6]

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178. In *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000), the Court said: "Deliberate indifference is a very high standard—a showing of mere negligence

---

[6] The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments." Therefore, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor,* 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*). But, the Supreme Court concluded in *Farmer*, 511 U.S. at 844, that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Accord Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).

The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Farmer*, 511 U.S. at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Stritehoff v. Green*, CCB-09-3003, 2010 WL 4941990, at *3 (D. Md. Nov. 30, 2010) ("An officer who responds reasonably to 'the risk of which he actually knew' is not liable for deliberate indifference.") (quoting *Brown*, 240 F.3d at 390-91). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d at 390 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016).

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

### C. The Correctional Officer Defendants

The parties do not dispute that plaintiff suffers from a serious medical condition and that

he is generally entitled to be handcuffed in front. Nor do the parties dispute that Saville and Schroyer did not comply with the medical order and settlement agreement regarding front cuffing on two occasions. But, Saville and Schroyer each deny that they were aware of the front cuffing order.

Plaintiff, however, has produced adequate evidence to create a dispute of material fact. He claims that both officers were familiar with his cuffing order due to each of them working on the tier where he was housed. Further, he claims that after the settlement agreement was finalized there were instances of failure to comply with the agreement, resulting in his filing administrative grievances. One result of those grievances was the assurance that all staff had been alerted to plaintiff's cuffing status. Additionally, plaintiff maintains that on the specific occasions complained of he specifically advised Saville and Schroyer of his cuffing status but they refused to escort him unless he submitted to back cuffing. And, as to the incident involving Saville, plaintiff has provided the affidavit of another inmate who witnessed the incident and who verified plaintiff's version of events.

On this record, and given the posture of the case, I cannot determine whether Saville and Schroyer knew of plaintiff's medical need to be front cuffed. Nor may I resolve the question of whether they deliberately disregarded the settlement agreement and/or medical order. Resolution of these matters involves determinations as to credibility, which are not appropriately decided on summary judgment. *See Anderson*, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge . . . .").

Defendants also claim that plaintiff has failed to show any injury as a result of the two incidents. However, plaintiff has put forth sufficient evidence to create a dispute of fact regarding the timing, cause, and extent of the renewed shoulder injury.

Plaintiff was evaluated by Dr. Ashraf during the front cuffing incident of August 29, 2016, with Saville. Dr. Ashraf did not make any notations in the medical records regarding plaintiff's cuffing status. But, he did note that plaintiff's shoulder was in pain. The parties dispute the accuracy of Ashraf's comment attributing plaintiff's shoulder injury to his playing basketball, with plaintiff explaining that Ashraf was confused about the history of his multiple joint injuries. Nevertheless, the day after the incident plaintiff filed a sick call slip complaining of shoulder pain, which he attributed to the cuffing incident the preceding day. He was not immediately seen as a result of that sick call slip. When he was seen by Bilak on September 8, 2016, she observed objective evidence of a renewed injury to his shoulder. Additional treatment, including physical therapy, a cortisone shot, and referral to the orthopedist, followed.

In regard to the October incident, plaintiff claims that he advised Schroyer that he needed medical attention as a result of Schroyer's cuffing him from behind, but Schroyer refused to contact the medical department on his behalf. The following day plaintiff received an arm sling and ice from Nurse Bilak and continued with his already prescribed course of treatment.

Defendants' exhibits create genuine issues of material fact regarding their knowledge of plaintiff's front cuffing order and the extent of injuries plaintiff sustained as a result of their conduct. Viewing the facts in the light most favorable to the plaintiff, as I must, a factfinder could determine that defendants Saville and Schroyer ignored the requirements of a medical order they knew to be valid and were deliberately indifferent to plaintiff's medical needs. *See Estelle,* 429 U.S at 105 (holding that intentional interference with prescribed medical care can constitute deliberate indifference); *Shelton v. Angelone,* 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) (citing *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990)). Because there are genuine issues of material fact as to Saville and Schroyer, summary judgment will be denied.

### D. Warden Bishop

Defendants also contend that plaintiff's Complaint against Warden Frank Bishop should be dismissed because he is not liable under a theory of respondeat superior. As noted, the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d at 782 (no respondeat superior liability under § 1983); *see also Trulock*, 275 F.3d at 402 (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard*, 268 F.3d at 235 (quoting *Slakan*, 737 F.2d at 372).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799.

Plaintiff alleges that Warden Bishop was "legally responsible for the operations of NBCI and for the welfare of all the inmates in that prison." ECF 1 at 2. He also correctly notes that Bishop was a signatory to the settlement agreement regarding front cuffing, and he signed off on grievances that erroneously said that plaintiff did not have a valid front cuff order. ECF 21 at 5. Despite signing the agreement, Bishop allegedly took no action to ensure that custody staff were made aware of the agreement and plaintiff's cuffing status. Reading plaintiff's Complaint

generously, his contention appears to be that Bishop's failure to act demonstrated deliberate indifference both to plaintiff's serious medical needs as well as to the practices of his staff, who failed to comply with the settlement agreement. In light of plaintiff's self-represented status and the undeveloped record regarding the action, if any, that Bishop took to ensure that the settlement agreement was enforced and that plaintiff's medical order was complied with, the Motion shall be denied as to Bishop.

### E. Qualified Immunity

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. *See* Pevia II, ECF 17 at 1; Pevia III, ECF 14-1 at 23.

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity shields government officials from liability for civil damages [in a § 1983 action] when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *see Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019); *Bland*, 730 F.3d at 391. The doctrine "'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Moreover, it "gives government official breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5, (2013) (internal quotation marks and citation omitted). But, an official is not entitled to qualified immunity if he deprived an individual of a constitutional right and that right was clearly established at the time of the violation. *Pearson*, 555

U.S. at 231.

The analysis has two prongs.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam).  First, the question is whether the law enforcement officer violated constitutional or other rights.  Second, the question is whether those rights were clearly established at the time, such that a reasonable officer would have known that the conduct was unconstitutional.  *Smith*, 781 F.3d at 100.

To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right."  *Bland*, 730 F.3d at 391.  Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (citations omitted). If the court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

The question of whether a right is clearly established is a question of law for the Court to decide.  *Hupp*, 931 F.3d at 318; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).  "The question of whether a reasonable officer would have known that the conduct at issue violated that right . . . cannot be decided on summary judgment if disputes of the historical facts exist."  *Hupp*, 931 F.3d at 318; *see Smith*, 781 F.3d at 100.  Thus, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly

violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (alteration and omission in original) (quoting *Pritchett*, 973 F.2d at 313).

Plaintiff contends that defendants were aware that he suffered from a serious medical condition, which required front cuffing. They would have had suck knowledge given the history of this case. Yet, according to Pevia, they forced him to be handcuffed from behind, causing injury to his shoulder. Construed in the light most favorable to plaintiff, the conduct at issue would amount to deliberate interference with plaintiff's medical orders regarding a serious medical need. Such conduct, if proved, would violate the Eighth Amendment. On these alleged facts, and at this juncture, defendants are not entitled to qualified immunity.

A separate Order follows.

<u>September 4, 2019</u>
Date

_____/s/_____
Ellen L. Hollander
United States District Judge